UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STANDARD MORTGAGE COMPANY | CIVIL ACTION |
| VERSUS | NO: 08-4589 |
| MONICA WASHINGTON AND FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY | SECTION: "S" (2) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, Fidelity National Property and Casualty Insurance Company (Doc. #13) is **DENIED** as to Standard Mortgage Company's claim for issuance of payment under the policy, because Fidelity National Property and Casualty Insurance Company is not entitled to judgment as a matter of law on that issue, and **GRANTED** as to Standard Mortgage Company's extra-contractual claims.

## BACKGROUND

This matter comes before the court on a motion for summary judgment filed by defendant, Fidelity National Property and Casualty Insurance Company ("Fidelity"). Fidelity, a Write-Your Own Program insurance carrier participating in the United States Government's National Flood

Insurance Program ("NFIP"), argues that plaintiff's claims against it should be dismissed because it followed the strict guidelines of the Standard Flood Insurance Policy ("SFIP") in issuing payment under the policy. Further, Fidelity argues that plaintiff's extra-contractual claims for interest, costs, and attorneys fees, among other things, are preempted by the National Flood Insurance Act ("NFIA"), 42 U.S.C. §4001, *et seq.* Plaintiff, Standard Mortgage Company ("Standard Mortgage"), opposes the motion arguing that Fidelity failed to protect its interest as an additional insured.

On August 19, 2002, Monica Washington ("Washington") and Standard Mortgage entered into a mortgage on real property located at 10115 Seawood Street, New Orleans, Louisiana. The mortgage required Washington to maintain flood insurance on the property and lists Standard mortgage as a loss payee. The mortgage also required Washington to direct the flood insurance carrier to make payment for flood losses directly to Standard Mortgage, instead of to Washington and Standard Mortgage jointly. Fidelity, in its capacity as a WYO insurance carrier in the NFIP, issued a SFIP to Washington for the Seawood Street property, which listed Standard Mortgage as an additional loss payee.

The Seawood Street property sustained flood damage as a result of Hurricane Katrina. After the claim was adjusted, Fidelity issued a check in the amount of $106,536.79 for the building damages covered under the SFIP. The check was payable jointly to Washington and Standard Mortgage. Standard Mortgage alleges that Washington committed fraud when she cashed the check, without Standard Mortgage's endorsement, and converted the funds. Standard Mortgage also alleges that Fidelity breached the mortgage provision by giving the check to Washington, and is

2

liable to it for the loss on the loan, interest, late charges, advances, taxes, insurance, assessments, attorneys' fees and costs.

## ANALYSIS

**1.     Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**2.     Fidelity's Motion for Summary Judgment**

    **A.     Standard Mortgage's Claim Regarding Payment Under the SFIP**

Standard Mortgage alleges that Fidelity breached a provision of Washington's mortgage by making the insurance proceeds check payable to both Washington and Standard Mortgage, instead of only to Standard Mortgage, and by giving that check to Washington, instead of Standard

Mortgage. Fidelity argues that it followed the SFIP's guidelines in paying all named insured as directed under the policy.

The NFIP was established by the NFIA, and is administered through the Federal Emergency Management Agency ("FEMA"). Wright v. Allstate Ins. Co. (Wright I), 415 F.3d 384, 386 (5th Cir.2005). FEMA sets the terms and conditions of all federal flood insurance policies, and those polices must be issued in the form of a SFIP. 44 C.F.R. § 61.4(b); Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir.1998). SFIP provisions cannot "be altered, varied, or waived other than by the express written consent of the [Federal Insurance] Administrator" and must be strictly construed and enforced. 44 C.F.R. § 61.13(d); Wright I, 415 F.3d at 387; Gowland, 143 F.3d at 953-54; see also Forman v. FEMA, 138 F.3d 543, 545 (5th Cir. 1998).

Although SFIP proceeds can be issued by a WYO insurance provider directly to consumers, "[p]ayments on SFIP claims come ultimately from the federal treasury."[1] Wright I, 415 F.3d at 386; see also Gowland, 143 F.3d at 953. Because the federal treasury is implicated in the payment of flood claims, the provisions of an SFIP must be strictly construed and enforced. See Forman, 138 F.3d at 545.

The SFIP dwelling form is found at 44 C.F.R., Pt. 61, App. A(1). Article VII(M) of the SFIP provides that the insurer "will pay you unless some other person or entity is named in the policy or

---

[1] FEMA regulations for the NFIP provide that "loss payments" shall be payable from federal funds. 44 C.F.R. pt. 62, app. A, art. III(D)(2) ("Loss payments include payments as a result of litigation that arises under the scope of this Arrangement [between WYOs and the federal government], and the Authorities set forth herein."). "Under the Appropriations Clause of the Constitution, '[m]oney may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute.'" Wright I, 415 F.3d at 387 (quoting Office of Pers. Mgmt. v. Richmond, 110 S.Ct. 2465, 2471 (1990)).

4

is legally entitled to receive payment." As defined in Article II, "you" includes the "insured(s)," which in turn includes "any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of the loss in order of precedence."[2] 44 C.F.R., Pt. 61, App. A(1), Article II(A).

It is undisputed that Washington was the insured, and Standard Mortgage was named as an additionally loss payee. Pursuant to the policy, Fidelity was required to pay both Washington and Standard Mortgage, which are both encompassed within the policy's definition of "you." Further, Article VII(Q) provides that "[a]ny loss payable under Coverage A -- Building Property will be paid to any mortgagee of whom we have actual notice, as well as any other mortgagee or loss payee determined to exist at the time of loss, and you as interests appear." 44 C.F.R., Pt. 61, App. A(1), Article VII(Q).

Standard Mortgage argues that Fidelity should have issued the check to Standard Mortgage only. The policy states that payment will be made to the insured unless some other person or entity is legally entitled to receive payment. The policy also states property losses will be paid to any mortgagee or loss payee determined to exist at the time of the loss. This language in the policy contemplates that there may be a contract, or other obligation, that would affect the manner in which

---

[2] Article II(A) provides:
    In this policy, "you" and "your" refer to the insured(s) shown on the Declarations Page of this policy and your spouse, if a resident of the same household. Insured(s) includes: Any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss in order of precedence. "We," "us," and "our" refer to the insurer.
44 C.F.R., Pt. 61, App. A(1), Article II(A).

payment under the policy is issued. The mortgage between Washington and Standard Mortgage states that Washington must direct the flood insurance carrier to make payment for flood losses directly to Standard Mortgage, instead of to both Washington and Standard Mortgage. Because the policy anticipates that insurance proceeds may be payable to someone other than the insured, Fidelity's payment of the insurance proceeds had to conform to the terms of Washington's mortgage. Thus, Standard Mortgage is not entitled to judgment as a matter of law regarding whether it properly issued payment under the policy.

### B. Standard Mortgage's Extra-Contractual Claims

Standard Mortgage further claims that Fidelity is liable to it for interest, late charges, advances, taxes, insurance, assessments, attorneys' fees and costs. Fidelity argues that such extra-contractual claims are preempted, by the NIFA.

In Wright I, the Fifth Circuit specifically held an insured's state law claims were preempted by NFIA in a suit brought by a flood insurance policyholder who sought additional proceeds for his flood damaged home as a result of Tropical Storm Allison. Wright I, 415 F.3d at 390. Persuaded by several circuit decisions outside the jurisdiction, the Fifth Circuit noted:

> We join these circuits in holding that state law tort claims arising from claims handling by a WYO are preempted by federal law. . . . We note that the significance of this holding may have been pretermitted by FEMA regulation. In 2000, FEMA amended the language of SFIP policies to state: "this policy and all disputed arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 . . . and Federal common law."

Id.

On appeal after remand, the Fifth Circuit took up the issue of whether the plaintiff in Wright had claims under federal common law for fraud and negligent misrepresentation. Wright v. Allstate Insurance Co., 500 F.3d 390 (5th Cir. 2007), cert. denied, 128 S.Ct. 1248 (2008) (citing 44 C.F.R. Pt. 61, App. A(1), Article IX). After an exhaustive analysis, the court concluded that the plaintiff had no federal common law right, either expressed or implied, to bring extra-contractual claims against the insurer.

Thus, the court concludes that to the extent that Standard Mortgage is attempting redress under state law, these claims are preempted by federal law, and that to the extent plaintiff is attempting redress under federal common law, no such federal common law right of action exists under the NFIA.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, Fidelity National Property and Casualty Insurance Company (Doc. #13) is **DENIED** as to Standard Mortgage Company's claim for issuance of payment under the policy, because Fidelity National Property and Casualty Insurance Company is not entitled to judgment as a matter of law on that issue, and **GRANTED** as to Standard Mortgage Company's extra-contractual claims.

New Orleans, Louisiana, this 21st day of January, 2010.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**